**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

LOUIS VUITTON MALLETIER,

> Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

> Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Louis Vuitton Malletier ("Plaintiff" or "Louis Vuitton"), hereby sues Defendants, the Individuals, Business Entities, and Unincorporated Associations on Schedule "A" hereto (collectively "Defendants"). Defendants are promoting, offering for sale, selling, and/or distributing goods bearing and/or using counterfeits and confusingly similar imitations of Louis Vuitton's trademarks within this district through various Internet based e-commerce stores operating under the seller names set forth on Schedule "A" (the "E-commerce Store Names"). In support of its claims, Louis Vuitton alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Louis Vuitton's state

law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through at least, the Internet based e-commerce stores[1] accessible and doing business in Florida and operating under their E-commerce Store Names.  Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-residents in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFF

4.      Louis Vuitton is a foreign business entity organized under the laws of the Republic of France with its principal place of business located at 2, rue du Pont-Neuf in Paris, France 75034. Louis Vuitton operates boutiques throughout the world, including within this district. Louis Vuitton is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality goods under multiple world-famous

---

[1] Certain Defendants use their respective E-commerce Store Name in tandem with electronic communication via private messaging applications and/or services in order to complete its offer and sale of counterfeit Louis Vuitton-branded products. Specifically, consumers are able to browse listings of Louis Vuitton-branded products online via the respective Defendant's E-commerce Store Name, ultimately directing customers to send inquiries, exchange data, and complete purchases via electronic communication with the Defendant.

common law and federally registered trademarks, including those identified in Paragraph 15 below. Louis Vuitton offers for sale and sells its trademarked goods within the State of Florida, including this district, through its boutiques and online retail website. Defendants, through the offer to sell and sale of counterfeit and infringing Louis Vuitton branded products, are directly, and unfairly, competing with Louis Vuitton's economic interests in the United States, including within the State of Florida and causing Louis Vuitton irreparable harm within this jurisdiction.

5.      Like many other famous trademark owners, Louis Vuitton suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Louis Vuitton's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores.  The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with the Louis Vuitton name and associated trademarks and the destruction of the legitimate market sector in which it operates.

6.      To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Louis Vuitton expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement.  The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies, such as Louis Vuitton, to expend significant resources across a wide spectrum of efforts in order to protect both consumers and itself from confusion and erosion of the goodwill embodied in Louis Vuitton's brand.

## THE DEFENDANTS

7.     Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants target their business activities towards consumers throughout the United States, including within this district, through the simultaneous operation of, at least, their commercial Internet based e-commerce stores under the E-commerce Store Names.

8.     Certain Defendants operates under their respective E-commerce Store Name in tandem with electronic communication via private messaging applications and/or services, thereby creating an interconnected ecosystem which functions as an online marketplace operation.

9.     Defendants use aliases in conjunction with the operation of their businesses including but not limited to those identified by Defendant Number on Schedule "A."

10.    Defendants are the past and/or present controlling forces behind the sale of products using counterfeits and infringements of Louis Vuitton's trademarks as described herein.

11.    Defendants directly engage in unfair competition with Louis Vuitton by advertising, offering for sale, and selling goods each bearing and/or using counterfeits and infringements of one or more of Louis Vuitton's trademarks to consumers within the United States and this district through Internet based e-commerce stores using, at least, the E-commerce Store Names, as well as additional e-commerce store or seller identification aliases not yet known to Louis Vuitton. Defendants have purposefully directed some portion of their unlawful activities

toward consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing Louis Vuitton branded goods into the State.

12. Defendants have registered, established or purchased, and maintained their E-commerce Store Names. Defendants may have engaged in fraudulent conduct with respect to the registration of the E-commerce Store Names by providing false and/or misleading information during the registration or maintenance process related to their respective E-commerce Store Names. Many Defendants have anonymously registered and/or maintained their E-commerce Store Names for the sole purpose of engaging in unlawful infringing and counterfeiting activities.

13. Defendants will likely continue to register or acquire new e-commerce store names, or other aliases, as well as related payment accounts, for the purpose of selling and offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Louis Vuitton's trademarks unless preliminarily and permanently enjoined.

14. Defendants' E-commerce Store Names, associated payment accounts, and any other alias e-commerce store or seller identification names used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Louis Vuitton's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement schemes and cause harm to Louis Vuitton. Moreover, Defendants are using Louis Vuitton's famous name and/or trademarks to drive Internet consumer traffic to at least one of their e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names and decreasing the size and value of Louis Vuitton's legitimate marketplace and intellectual property rights at Louis Vuitton's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Business and Trademark Rights

15.     Louis Vuitton is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Louis Vuitton Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
|  | 0,297,594 | September 20, 1932 | IC 018. Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, hand bags, and pocketbooks. |
| LOUIS VUITTON | 1,045,932 | August 10, 1976 | IC 018. Luggage and ladies' handbags. |
|  | 1,519,828 | January 10, 1989 | IC 018. Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, hand bags, pocketbooks. |
| LOUIS VUITTON | 1,990,760 | August 6, 1996 | IC 014. Watches and straps for wrist watches. IC 016. Catalogues featuring luggage and travel accessories, bags, small leather goods, and garments; notebooks, anthologies, and pamphlets referring to travel; calendars; telephone indexes; fountain pens, ballpoint pens, nibs, covers for pocket and desk diaries, and checkbook holders. IC 018. Trunks; traveling trunks; suitcases; traveling bags; luggage; garment bags for travel; hat boxes for travel; shoe bags for travel; umbrellas; animal carriers; rucksacks; haversacks; leather or textile shopping bags; beach bags; handbags; vanity cases sold empty; attaché cases; tote bags, travel satchels; clutch bags; briefcases; wallets; pocket wallets; credit card cases; business card cases; bill and card holders; checkbook holders; key cases; change purses; briefcase-type portfolios. IC 024. Travel blankets. IC 025. Shirts; sweatshirts; polo shirts; T-shirts; headwear; jackets; ties; belts; shawls; scarves. |

| | | | |
|---|---|---|---|
|  | 2,177,828 | August 4, 1998 | IC 014. Goods made of precious metals, namely, shoe ornaments, ornamental pins; jewelry, namely, rings, ear rings, cufflinks, bracelets, charms, necklaces; horological instruments, straps for watches, watches and wrist-watches, and cases for watches.<br><br>IC 018. Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather; trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, and credit card cases, umbrellas.<br><br>IC 025. Clothing and underwear, namely, ((shirts, )) (( waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, )) shawls, stoles, ((scarves, neckties, pocket squares, )) belts, shoes, boots and sandals. |
|  | 2,181,753 | August 18, 1998 | IC 014. Jewelry, namely, rings, ear rings, bracelets, charms, necklaces, horological instruments, straps for watches, watches, and wrist-watches, cases for watches.<br><br>IC 018. Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather; trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, credit card cases, and umbrellas.<br><br>IC 025. Clothing and underwear, namely, shirts, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, belts, shoes, boots, and sandals. |

| | | | |
|---|---|---|---|
|  | 2,361,695 | June 27, 2000 | IC 025. Clothing, namely, sweaters, shirts, sweatshirts, polo shirts, t-shirts, suits, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, pocket handkerchief squares for wear, gloves, ties, belts, bathing suits, shoes, boots and sandals, and hats. |
|  | 2,399,161 | October 31, 2000 | IC 25. Clothing and underwear, namely, shirts, polo shirts, t-shirts, waistcoats, raincoats, skirts, coats, trousers, dresses, jackets, shawls, stoles, scarves, neckties, gloves, ties, belts, bathing suits, shoes, boots and sandals, hats. |
|  | 2,773,107 | October 14, 2003 | IC 014. Jewelry including ((rings,)) ((earrings,)) cuff links, bracelets, ((charms,)) necklaces, ((and medallions;)) horological and chronometric instruments and apparatus, namely, watches.<br><br>IC 018. Travel bags, travel bags made of leather; luggage trunks and valises, garment bags for travel, vanity-cases sold empty; rucksacks, shoulder bags, handbags; attaché cases, briefcases, drawstring pouches, pocket wallets, purses, umbrellas, business card cases made of leather or of imitation leather, credit card cases made of leather or of imitation leather; key holders made of leather or of imitation leather.<br><br>IC 025. Clothing, namely, ((shirts, T-shirts,)) belts, scarves, neck ties, shawls, ((skirts,)) raincoats, overcoats, ((trousers, jeans, pullovers, frocks,)) high-heeled shoes, low-heeled shoes, boots, tennis shoes; ((hats)). |

| | | | |
|---|---|---|---|
| | 3,107,072 | June 20, 2006 | IC 09. Spectacles, sunglasses and spectacle cases.<br><br>IC 18. Leather and imitation leather products, namely, traveling bags, traveling sets comprised of bags or luggage, trunks and suitcases, garment bags for travel purposes; vanity cases sold empty, rucksacks, shoulder bags, handbags, attaché cases, document wallets and briefcases made of leather, pouches made of leather, wallets, purses, business card cases, credit card cases; umbrellas.<br><br>IC 25. Clothing and undergarments, namely, belts, scarves, shawls, jackets, sashes for wear, shoes, boots. |
| | 4,192,541 | August 21, 2012 | IC 09. Sunglasses; spectacles; accessories for telephones, mobile telephones, smart phones, PC tablets, personal digital assistants, and MP3 players, namely, covers, housings, and neck straps.<br><br>IC 14. Jewelry; tie pins; jewelry boxes; watches; watch bands; cases for timepieces.<br><br>IC 16. Printed matter, namely, catalogs, and books in the field of travel, luggage, luxury goods, fashion, clothing, sports, the arts; stationery articles, namely, writing books, drawing books, notebooks, covers for diaries, indexes, and pads; office requisites, namely, pencil holders, pen holders, postcards.<br><br>IC 18. Boxes of leather or imitation leather for packaging and carrying goods; traveling bags; trunks; suitcases; vanity cases sold empty; toiletry bags sold empty; backpacks; handbags; attaché cases; leather document cases; wallets; purses; leather key cases.<br>IC 24. Textiles and textile goods, namely, bath linen, towels.<br><br>IC 25. Clothing, namely, shirts, tee-shirts, pullovers, skirts, dresses, trousers, coats, jackets, belts for clothing, scarves, sashes for wear, gloves, neckties, socks, bathing suits; footwear; headwear. |

| LOUIS VUITTON | 4,530,921 | May 13, 2014 | IC 09. Sunglasses; accessories for telephones, mobile phones, smart phones, namely, covers, neck straps, neck cords, and bags and cases specially adapted for holding or carrying portable telephones and telephone equipment and accessories. |
|---|---|---|---|
| | | | IC 16. Paper bags; boxes of cardboard or paper; posters; postcards; catalogs featuring luggage, travel accessories, bags, small leather goods, and clothing; printed publications, namely, books, and magazines featuring luggage, travel accessories, purses, small leather goods, and clothing; photograph albums; stationery, namely, note pads, note books; diaries; office requisites, namely, paper weights, pencil holders, pen holders, pen cases. |
| | | | IC 25. Clothing, namely, pullovers, vests, shirts, tee-shirts, trousers, jackets, suits, coats, rain coats, waterproof jackets, overcoats, parkas, skirts, dresses, pajamas, gloves, neck ties, belts for clothing, leather belts, scarves, pocket squares, sashes for wear, shawls, stoles, bathing suits; headwear; shoes; slippers; boots; half-boots. |
| | | | IC 26. Buttons; shoe buckles; hair accessories, namely, barrettes, hair clips, hair bands, hair wraps; hair ornaments; brooches for clothing. |

| | | | |
|---|---|---|---|
|  | 4,614,736 | September 30, 2014 | IC 09. Sunglasses; spectacle cases; accessories for telephones, mobile phones, smart phones, tablet devices, PDAs, and MP3 players, namely, covers, neck straps, neck cords, and bags and cases specially adapted for holding or carrying portable telephones and telephone equipment and accessories.<br><br>IC 16. Pamphlets referring to travel; postcards; catalogs featuring luggage, travel accessories, bags, small leather goods, and clothing; invitation cards; printed publications, namely, books, and magazines featuring luggage, travel accessories, purses, small leather goods, and clothing; photograph albums; stationery, namely, note pads, writing pads, envelopes, note paper; calendars; pocket calendars; note books; diaries; office requisites, namely, paper weights, pencil holders, pen holders, pen cases.<br><br>IC 26. Buttons; shoe buckles; hair accessories, namely, barrettes, hair clips, hair bands, hair wraps; hair ornaments; brooches for clothing; clothing fasteners, namely, scarf holders. |
|  | 5,477,535 | May 29, 2018 | IC 009. scientific, nautical, surveying, photographic, cinematographic, optical, weighing, measuring, signaling, checking and supervision, life-saving and teaching apparatus and instruments, namely, life vests; apparatus for recording, transmission, reproduction of sound or images, magnetic recording media, namely, blank magnetic data carriers, blank sound recording disks; bags and cases for video cameras or photographic apparatus; blank recordable CD-Rs, blank recordable DVDs and other digital recording media, namely, blank digital storage media; calculating machines, data processing equipment, computers and computer equipment, namely, computer peripherals, computer keyboards, printers for use for computers, mouse pads; computer software for downloading, publishing, showing, displaying, labeling, blogging, and |

| | | | sharing electronic media or information via the Internet or other communications networks in the fields of travel, luggage, luxury goods, fashion, clothing, sports, sailing, and the arts; blank USB sticks, electronic agendas, game software, recorded computer programs, for downloading, displaying, and sharing electronic media or information via the Internet or other communications networks in the fields of travel, luggage, luxury goods, fashion, clothing, sports, sailing, and the arts; electronic publications, namely, catalogs, books, brochures, pamphlets, and booklets in the fields of travel, luggage, luxury goods, fashion, clothing, sports, sailing, and the arts downloadable online or from the Internet; spectacles, sunglasses; spectacle frames; spectacle lenses, contact lenses; cases for spectacles or for contact lenses; signaling buoys, marker buoys in the nature of positioning buoys; telephones, mobile telephones, smartphones, tablets computers, personal electronic assistants (PDAs) and MP3 players; accessories for telephones, mobile telephones, smartphones, tablet computers, PDAs, and MP3 players, namely, hands-free kits for telephones, batteries, covers and cases, protective covers in the nature of facings; battery chargers, straps and lanyards for use with telephones, mobile telephones, smartphones, tablet computers, PDAs, and MP3 players, earphones; bags and cases specially adapts for holding or carrying mobile telephones and telephone equipment.<br><br>IC 014. Jewelry; fashion jewelry, especially precious or semi-precious stones, pearls, rings, earrings, cuff links, bracelets, charms, brooches, necklaces, pendants, key rings of precious metal, tie pins, medallions, jewelry rolls for travel; jewelry boxes; trophies of precious metal; timepieces, watches, wristwatches, watch straps, alarm clocks, stop watches, clock and watch making pendulums and cases or presentation cases for timepieces. |
|---|---|---|---|

|  |  |  | IC 018. Boxes of leather or imitation leather; travel bags, travel sets, namely, leather travel bags, trunks and suitcases, garment travel bags for footwear; unfitted vanity cases; backpacks, handbags; sports bags; evening bags, namely, clutch bags, attaché cases and briefcases of leather; wallets, purses, card wallets, key cases of leather; parasols, umbrellas.

IC 025. Clothing, namely, pullovers, vests, shirts, tee-shirts, trousers, jackets, suits, coats, raincoats, overcoats, parkas, skirts, dresses; pajamas, house coats, night shirts, dressing gowns; clothing accessories, namely, hats, caps, bonnets, gloves, neckties, belts, leather belts, scarves, pocket squares, shawls, stockings, socks, tights, suspenders, stoles; underwear, lingerie; bathing suits; footwear, slippers, boots and half-boots.

IC 041. Educational, training, and entertainment services, namely, editing and publishing of catalogs, newspapers, books, magazines and texts other than for advertising in the field of travel, luggage, luxury goods, fashion, clothing, sports, and the arts; sporting activities, namely, arranging and organization of sporting competitions and of sailing contests; sporting and cultural activities, namely, sailing races; organization of sporting competitions and of sailing contests; radio entertainment, television show and film production; publishing of electronic publications, namely, on-line providing of electronic, non-downloadable publications; cultural activities, namely, organization of events for cultural purposes; organization of competitions for education or entertainment purposes, namely, sports competitions; arranging and conducting of educational conferences and congresses; educational services, namely, arranging and conducting of colloquiums and seminars in the field of travel, luggage, luxury goods, fashion clothing, sports, sailing, and the arts; educational services, namely, conducting educational conferences, congresses, |
|--|--|--|--|

|  |  |  | seminars in the field of travel, luggage, luxury goods, fashion clothing, sports, sailing, and the arts; organization of exhibitions for cultural or educational purposes; arranging and conducting of concerts, specifically excluding concerts offered by or in nightclubs; museum services, namely, providing museum facilities presentations and exhibitions; production of fashion shows; entertainment information, information on education, information on education in the field of training; organization of fashion shows for entertainment purposes; photographic reporting; entertainment services in the nature of production and distribution of multimedia entertainment contents, namely, programs and events provided through audio and video for broadcasting on a telecommunications network including computer networks; photography, photographic reporting; publication of books, publication of texts other than advertising texts, electronic publication of books and magazines online, writing of texts other than advertising and publicity texts, publication of books and reviews. |
|---|---|---|---|

The Louis Vuitton Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above.  True and correct copies of the Certificates of Registration for the Louis Vuitton Marks are attached hereto as Composite Exhibit "1."

16.     The Louis Vuitton Marks have been used in interstate commerce to identify and distinguish Louis Vuitton's high-quality goods for an extended period of time.

17.     The Louis Vuitton Marks have been used in commerce by Louis Vuitton long prior in time to Defendants' use of copies of those Marks. The Louis Vuitton Marks have never been assigned or licensed to any of the Defendants in this matter.

18.     The Louis Vuitton Marks are symbols of Louis Vuitton's quality, reputation and goodwill. Louis Vuitton has continuously used the Louis Vuitton Marks since registration.

19.     The Louis Vuitton Marks are well-known and famous and have been for many years. Louis Vuitton expends substantial resources developing, advertising and otherwise promoting the Louis Vuitton Marks and products bearing the Louis Vuitton Marks.  The Louis Vuitton Marks qualify as famous marks as that term is used in 15 U.S.C. § 1125(c)(1).

20.     Further, Louis Vuitton extensively uses, advertises, and promotes the Louis Vuitton Marks in the United States in association with the sale of high-quality goods and has carefully monitored and policed the use of the Louis Vuitton Marks.

21.     As a result of Louis Vuitton's efforts, members of the consuming public readily identify merchandise bearing or sold using the Louis Vuitton Marks as being high quality goods sponsored and approved by Louis Vuitton.

22.     Accordingly, the Louis Vuitton Marks have achieved secondary meaning among consumers as identifiers of high-quality goods.

23.     Genuine goods bearing the Louis Vuitton Marks are widely legitimately advertised and promoted by Louis Vuitton, its authorized distributors, and unrelated third parties via the Internet.  Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Louis Vuitton's overall marketing and consumer education efforts. Thus, Louis Vuitton expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies.  Those strategies allow Louis Vuitton and its authorized retailers to educate consumers fairly and legitimately about the value associated with

the Louis Vuitton brand and the goods sold thereunder, and the problems associated with the counterfeiting of Louis Vuitton's trademarks.

**Defendants' Infringing Activities**

24.     Defendants are each promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the Louis Vuitton Marks (the "Counterfeit Goods") through at least the e-commerce stores operating under the E-commerce Store Names. Specifically, Defendants are each using the Louis Vuitton Marks to initially attract online consumers and drive them to Defendants' e-commerce stores operating under their E-commerce Store Names.  Defendants are each using identical copies of one or more of the Louis Vuitton Marks for different quality goods. Louis Vuitton has used the Louis Vuitton Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Louis Vuitton's merchandise.

25.     Defendants' Counterfeit Goods are of a quality substantially different than that of Louis Vuitton's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, offering for sale, and/or selling substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Louis Vuitton, despite Defendants' knowledge that they are without authority to use the Louis Vuitton Marks.  The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in or through Defendants' e-commerce stores are genuine goods originating from, associated with, and\or approved by Louis Vuitton.

26.     Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, the E-commerce Store

Names. In so doing, Defendants improperly and unlawfully use one or more of the Louis Vuitton Marks without Louis Vuitton's permission.

27.     Defendants are concurrently employing and benefitting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of the Louis Vuitton Marks. Specifically, Defendants are using counterfeits and infringements of Louis Vuitton's famous name and the Louis Vuitton Marks to make their e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Louis Vuitton and non-Louis Vuitton goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Louis Vuitton's genuine goods. Defendants are causing individual, concurrent, and indivisible harm to Louis Vuitton and the consuming public by (i) depriving Louis Vuitton and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Louis Vuitton's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Louis Vuitton Marks by viewing inferior products in either the pre or post sale setting, and (iii) increasing Louis Vuitton's overall cost to market its goods and educate consumers about its brand via the Internet.

28.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Louis Vuitton and the consuming public for Defendants' own benefit.

29.     At all times relevant hereto, Defendants have had full knowledge of Louis Vuitton's ownership of the Louis Vuitton Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

30.     Defendants' use of the Louis Vuitton Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Louis Vuitton's consent or authorization.

31.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Louis Vuitton's rights for the purpose of trading on Louis Vuitton's goodwill and reputation.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Louis Vuitton and the consuming public will continue to be harmed.

32.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive consumers, the public, and the trade into believing there is a connection or association between Louis Vuitton's genuine goods and Defendants' Counterfeit Goods, which there is not.

33.     Further, Defendants are using counterfeits of the Louis Vuitton Marks to falsely represent their websites operating under their Subject Domain Names as association with Louis Vuitton, and are, upon information and belief, using the Subject Domain Names and associated websites as phishing websites to fraudulently obtain personal and sensitive information, including credit card numbers, buying information, and other important data.

34.     Given the visibility of Defendants' various e-commerce stores and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Louis Vuitton and the overall consumer market in which they operate because of Defendants' concurrent actions.

35.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Louis Vuitton.

36.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their E-commerce Store Names and any other alias e-commerce store names being used and/or controlled by them.

37.     Further, Defendants, upon information and belief, are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Louis Vuitton.

38.     Louis Vuitton has no adequate remedy at law.

39.     Louis Vuitton is suffering irreparable injury because of Defendants' unauthorized and wrongful use of the Louis Vuitton Marks.  If Defendants' intentional counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Louis Vuitton and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

40.     The harm sustained by Louis Vuitton has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

41.     Louis Vuitton hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 40 above.

42.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Louis Vuitton Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

43.     Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the Louis Vuitton Marks. Defendants are continuously infringing and inducing others to infringe the Louis Vuitton Marks by using one or more of them to advertise, promote, offer to sell and/or sell counterfeit and infringing Louis Vuitton branded goods.

44.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

45.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to Louis Vuitton and are unjustly enriching Defendants with profits at Louis Vuitton's expense.

46.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of the Louis Vuitton Marks in violation of Louis Vuitton's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

47.     Louis Vuitton has suffered and will continue to suffer irreparable injury while Defendants are earning a substantial profit due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

**COUNT II - FALSE DESIGNATION OF ORIGIN
PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

48.     Louis Vuitton hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 40 above.

49.     Defendants' Counterfeit Goods bearing, offered for sale and sold using copies of one or more of the Louis Vuitton Marks have been widely advertised and offered for sale throughout the United States via the Internet.

50.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the Louis Vuitton Marks are virtually identical in appearance to Louis Vuitton's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

51.     Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs which falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Louis Vuitton's detriment.

52.     Defendants have each authorized infringing uses of one or more of the Louis Vuitton Marks in Defendants' advertisement and promotion of their counterfeit and infringing

branded goods. Some Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods they advertise and sell are genuine, non-infringing goods.

53.     Additionally, Defendants are simultaneously using counterfeits and infringements of one or more of the Louis Vuitton Marks to unfairly compete with Louis Vuitton and others for space within organic and paid search engine and social media results.  Defendants are thereby jointly (i) depriving Louis Vuitton of valuable marketing and educational space online which would otherwise be available to Louis Vuitton, and (ii) reducing the visibility of Louis Vuitton's genuine goods on the World Wide Web and across social media platforms.

54.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

55.     Louis Vuitton has no adequate remedy at law, and has sustained both individual and indivisible injury caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Louis Vuitton will continue to suffer irreparable injury to its goodwill and business reputation, while Defendants are earning a substantial profit.

**COUNT III - COMMON LAW UNFAIR COMPETITION**

56.     Louis Vuitton hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 40 above.

57.     This is an action against Defendants based on their promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing and/or using marks that are virtually identical to one or more of the Louis Vuitton Marks in violation of Florida's common law of unfair competition.

58.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing and/or using counterfeits and infringements of one or more

of the Louis Vuitton Marks. Defendants are also each using counterfeits and infringements of one or more of the Louis Vuitton Marks to unfairly compete with Louis Vuitton and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

59.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of the Louis Vuitton Marks.

60.     Louis Vuitton has no adequate remedy at law and is suffering irreparable injury because of Defendants' actions, while Defendants are earning a substantial profit.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

61.     Louis Vuitton hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 40 above.

62.     Louis Vuitton is the owner of all common law rights in and to the Louis Vuitton Marks.

63.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods using one or more of the Louis Vuitton Marks.

64.     Specifically, each Defendant is promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of the Louis Vuitton Marks.

65.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using the Louis Vuitton Marks.

66.     Louis Vuitton has no adequate remedy at law and is suffering irreparable injury because of Defendants' actions, while Defendants are earning a substantial profit.

**PRAYER FOR RELIEF**

67.     WHEREFORE, Louis Vuitton demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Louis Vuitton Marks; from using the Louis Vuitton Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Louis Vuitton; from falsely representing themselves as being connected with Louis Vuitton, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Louis Vuitton; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Louis Vuitton Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Louis Vuitton, or in any way

endorsed by Louis Vuitton and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Louis Vuitton's name or trademarks; and from otherwise unfairly competing with Louis Vuitton.

b.      Entry of a temporary, preliminary, and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the Louis Vuitton Marks.

c.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Louis Vuitton's request, those acting in concert or participation as service providers to Defendants, who have notice of the injunction, cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to the E-commerce Store Names, through which Defendants engages in the promotion, offering for sale and/or sale of goods using counterfeits and/or infringements of the Louis Vuitton Marks.

d.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Louis Vuitton to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods using counterfeits, and/or infringements of the Louis Vuitton Marks.

e.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Louis Vuitton to serve the injunction on the e-commerce

store's registrar(s) and/or the privacy protection service(s) for the E-commerce Store Names to disclose to Louis Vuitton the true identities and contact information for the registrants of the E-commerce Store Names.

f.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Louis Vuitton's request, the Defendants and the top level domain (TLD) Registry for each of the E-commerce Store Names, and any other e-commerce stores used by Defendants, or their administrators, including backend registry operators or administrators, place the E-commerce Store Names on Registry Hold status for the remainder of the registration period for any such name, thus removing them from the TLD zone files which link the E-commerce Store Names, and any other e-commerce store name being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Louis Vuitton Marks, to the IP addresses where the associated e-commerce stores are hosted.

g.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority canceling for the life of the current registration or, at Louis Vuitton's election, transferring the E-commerce Store Names and any other e-commerce store names used by Defendants to engage in their counterfeiting of the Louis Vuitton Marks at issue to Louis Vuitton's control so they may no longer be used for unlawful purposes.

h.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority authorizing Louis Vuitton to request any Internet search engines or service provider referring or linking users to any URL of the E-commerce Store Names, which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the E-commerce Store Names and/or permanently disable the references or links to all URLs of the E-

commerce Store Names used by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Louis Vuitton Marks, based upon Defendants' unlawful activities being conducted via the E-commerce Store Names as a whole and via any specific URLs identified by Louis Vuitton.

       i.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority authorizing Louis Vuitton to request any service providers, including specifically CloudFlare, Inc., to permanently cease providing any services to the Defendants in connection with any and all e-commerce store names, including but not limited to the E-commerce Store Names, through which Defendants engage in the promotion, offering for sale and/or sale of goods using counterfeits of the Louis Vuitton Marks, and further permanently deleting the E-commerce Store Names from its DNS used for the DoH (1.1.1.1), and identifying the websites operating under the Subject Domain Names as phishing websites based upon Defendants' unlawful phishing activities being conducted via the Subject Domain Names.

       j.     Entry of an Order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s) to assign all rights, title, and interest, to their E-commerce Store Name(s) to Louis Vuitton and, if within five (5) days of entry of such Order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

       k.     Entry of an Order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority requiring Defendants, their agent(s) or assign(s) to instruct all search engines to permanently delist or deindex the E-commerce Store Name(s) and, if within five (5) days of entry of such Order Defendants fails to make such a written instruction, the Court order the act to be

done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

l.   Entry of an Order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s) to instruct the Registrar(s) for each E-commerce Store Name(s) to permanently close the registration account(s) in which any E-commerce Store Name(s) are located and, if within five (5) days of entry of such Order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

m.   Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Louis Vuitton's request, any Internet marketplace website operators, administrators, registrar, and/or top level domain (TLD) Registry for the E-commerce Store Names who are provided with notice of an injunction issued by the Court identify any e-mail address known to be associated with Defendants' E-commerce Store Names.

n.   Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to instruct all of their service providers, including specifically CloudFlare, Inc., to permanently cease providing all services to Defendants and surrender all records in connection with any and all domain names, including but not limited to the E-commerce Store Names, and e-commerce websites through which Defendants engage in the promotion, offering for sale and/or sale of goods using counterfeits of the Louis Vuitton Marks, and further, permanently deleting the E-commerce Store Names from its DNS used for the DoH (1.1.1.1), and identifying the e-commerce websites operating under the E-commerce Store Names as phishing websites based upon Defendants' unlawful phishing activities being conducted via the

E-commerce Store Names and, if within five (5) days of entry of such order any Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

      o.    Entry of an Order requiring Defendants to account to and pay Louis Vuitton for all profits earned from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the profit award to Louis Vuitton be trebled, as provided for under 15 U.S.C. §1117, or that Louis Vuitton be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

      p.    Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Louis Vuitton's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

      q.    Entry of an Order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Louis Vuitton's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names, or other alias identification names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution

account(s), and remain restrained until such funds are surrendered to Louis Vuitton in partial satisfaction of the monetary judgment entered herein.

        r.     Entry of an award of pre-judgment interest on the judgment amount.

        s.     Entry of an Order requiring Defendants, at Louis Vuitton's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

        t.     Entry of an Order for any further relief as the Court may deem just and proper.

DATED: August 8, 2023.      Respectfully submitted,

                      STEPHEN M. GAFFIGAN, P.A.

                      By: **Stephen M. Gaffigan**
                      Stephen M. Gaffigan (Fla. Bar No. 025844)
                      Virgilio Gigante (Fla. Bar No. 082635)
                      T. Raquel Wiborg-Rodriguez(Fla. Bar. No. 103372)
                      Christine Ann Daley (Fla. Bar No. 98482)
                      401 East Las Olas Blvd., Suite 130-453
                      Ft. Lauderdale, Florida 33301
                      Telephone: (954) 767-4819
                      E-mail: Stephen@smgpa.cloud
                      E-mail: Leo@smgpa.cloud
                      E-mail: Raquel@smgpa.cloud
                      E-mail: Christine@smgpa.cloud

                      Attorneys for Plaintiff,
                      Louis Vuitton Malletier

**SCHEDULE "A"**

**[This page is the subject of Plaintiff's Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**